**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ALEX HAYTON**, a Florida resident,

    Plaintiff,

vs.

**LEROY WILLIAMS**, a Texas resident,

    Defendant.
_____/

CASE NO.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, ALEX HAYTON ("Hayton" or "Plaintiff"), by and through his undersigned attorneys, and sues Defendant, LEROY WILLIAMS ("Williams" or "Defendant"), and as grounds therefore states:

### PARTIES

1. Plaintiff, ALEX HAYTON, is a resident of the State of Florida and domiciled in the State of Washington.

2. Plaintiff performs under the name Lyrical LeXX.

3. Defendant, LEROY WILLIAMS, is a resident of and domiciled in the State of Texas.

4. Defendant does business under the names "Lee Williams" and "Mr. Lee."

### JURISDICTION & VENUE

5. This Court has personal jurisdiction over Defendant under Florida's long arm statute, § 48.193, Fla. Stat. (2019), because Mr. Williams engaged in business with the Plaintiff in

the State of Florida, reached into the State of Florida to solicit the sale of his services to Plaintiff, committed torts in the State of Florida, and breached multiple contracts to be performed in the State of Florida.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of attorneys' fees and costs.

7. Venue is properly laid in this Judicial District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district.

8. All conditions precedent to bringing this action have either occurred or have been performed, waived, or excused.

## GENERAL ALLEGATIONS

9. Plaintiff is a music artist and performer pursuing a bachelor's degree in music business at Full Sail University in Winter Park, Florida.

10. Defendant, professionally known as "Mr. Lee," is a rap music producer.

11. Williams has producer credits on hundreds of songs over three decades and has worked with well-known music industry artists such as Ludacris, Rick Ross, and Nipsey Hussle.

12. Williams offered to serve as a music industry consultant to Hayton to otherwise assist Hayton with his career in the music industry.

13. At all relevant times, Williams was aware that Hayton was a college student and that Hayton resided in Orange County, Florida during much of his business relationship with Hayton.

14. Williams sought out Hayton and contacted Hayton in the State of Florida to offer his services.

15. Unbeknownst to Hayton, Williams has been accused by others of re-selling or granting multiple exclusive licenses for individual songs, thereby defrauding his purchasers.

16. Unbeknownst to Hayton, Williams has been sued for fraud multiple times in connection with his activities in the music industry and, as a result of one such case, was ordered to pay in excess of $2.3 million in damages.

17. On or about April 30, 2019, Williams presented Hayton with a written contract entitled Independent Consulting Contract (the "Consulting Contract"), a true and correct copy of which is attached hereto as Exhibit "A".

18. The Consulting Contract memorialized the terms of the agreement between Williams and was duly executed by Hayton.

19. Hayton did not have the assistance or advice of counsel prior to entering into the Consulting Contract.

20. The contract term was for a period of twelve (12) months from May 1, 2019 through April 30, 2020. *See* Consulting Contract ¶ 2.

21. Pursuant to the Consulting Contract, Williams agreed to provide "over 1500 blog placements and banner promotions with itunes (sic) and spotify (sic) along with a host of other streaming networks." Consulting Contract ¶ 1.

22. Williams was also obligated to "work on average 6 hours per week in the performance of services." Consulting Contract ¶ 4.

23. In return for these promises, Hayton paid, and Williams accepted, Fifteen Thousand and No/100 Dollars ($15,000.00) in fulfillment of Hayton's obligations under the Consulting Contract.

24. Despite being paid for the promises he made in the Consulting Contract, Williams failed to provide any of the services promised, with the exception of replicating a single promotional article about Hayton on a handful of websites (the "Blog Posts").

25. The alleged Blog Posts, upon information and belief, were merely paid promotions on either unknown or not well-respected sites in the music industry.

26. The Blog Posts were published during a six-day period between June 25, 2019 and July 1, 2019.

27. Williams provided zero services, and performed no work, pursuant to the Consulting Contract after July 1, 2019.

28. Williams contacted Hayton in Florida and told Hayton that, in addition to providing services pursuant to the Consulting Contract, Williams could use his connections in the music industry to assist Hayton with licensing and securing "features" from well-known music artists for Hayton's songs.

29. Hayton paid Williams, and Williams accepted, Sixty-Two Thousand and No/100 Dollars ($62,000.00) as so-called "feature fees" (the "Feature Fees"), which Williams claimed was the cost for features by several well-known musical artists, including Kevin Gates, lil skies, T.I., and Trippie Redd (individually and collectively, the "Artists").

30. Williams did not schedule features with any of the Artists as agreed, and no features were completed by any of the Artists for use by Hayton.

31. None of the Artists or their representatives contacted Hayton in connection with any features or the Feature Fees.

32. Williams retained the Feature Fees while Hayton received nothing in exchange.

33. Williams refused to return the Feature Fees when requested to do so.

34. In or about May 2019, Williams contacted Hayton in Florida and told Hayton that he could secure exclusive licenses to two (2) separate musical recordings by the artists professionally known as lil Skies and T.I. (the "Recordings") on behalf of Hayton.

35. Williams promised that Hayton would be the sole and exclusive licensee for the Recordings throughout the world.

36. Hayton gave Williams approximately Twenty Thousand and No/100 Dollars ($20,000.00) as payment for the exclusive licensing fees (the "Licensing Fees") for the Recordings.

37. After receiving the Recordings from Williams, for which he was allegedly the **exclusive** licensee, Hayton heard one of the Recordings being used by another artist without his permission as the licensee.

38. At this point, it became evident to Hayton that Williams lied to him and that he did not have an exclusive license for either of the Recordings.

39. Williams did not provide Hayton with copies of any licensing agreements in connection with the Recordings.

40. Williams provided no receipts or other documentation evidencing that the rightsholders were paid the Licensing Fees or that the Licensing Fees were paid to anyone other than Williams.

41. Fearing that the Recordings were not licensed at all, Hayton did not use or release any music incorporating the Recordings.

42. Hayton fears and believes that Williams' deceit would result in liability for copyright infringement if he were to use any of the Recordings.

43. Hayton again received nothing in exchange for the almost $20,000.00 he paid Williams, but Williams retained the Licensing Fees.

44. In total, Hayton paid Williams approximately One-Hundred Sixteen Thousand Five Hundred and No/100 Dollars ($116,500.00) in exchange for Williams' promised services pursuant to the Consulting Contract and the subsequent agreements regarding the Licensing Fees and Feature Fees.

45. To date, the only thing Hayton has received in exchange for his $116,500.00 is one article about Hayton placed on a few paid promotional sites which have very little traffic and no industry recognition.

46. Plaintiff has retained the undersigned law firm and is obligated to pay a reasonable fee for its services.

## COUNT I – BREACH OF CONTRACT
### (Consulting Contract)

47. Plaintiff adopts, realleges, reavers, and incorporates by reference all allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

48. On or about May 1, 2019, Plaintiff and Defendant entered into a valid and enforceable agreement, identified hereinabove as the Consulting Contract, for the rendering of certain specific services by Williams in exchange for monetary payment by Plaintiff for those services.

49. At all times material hereto, the Consulting Contract was in full force and effect.

50. Plaintiff performed his duties under the Consulting Contract.

51. Defendant materially breached the Consulting Contract by failing to perform the agreed upon services.

52. As a direct and proximate cause of said breach, Plaintiff has suffered damages in the amount of Fifteen Thousand and No/100 Dollars ($15,000.00).

WHEREFORE, Plaintiff demands judgment in his favor against Defendant for the sum of $15,000.00, plus interest, costs and attorneys' fees, and such other and further relief that this Court deems just and proper.

### COUNT II – BREACH OF CONTRACT
### (Feature Fees)

53. Plaintiff adopts, realleges, reavers, and incorporates by reference all allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

54. In May 2019, Plaintiff and Defendant entered into a valid and enforceable agreement (the "Feature Fees Agreement") in the State of Florida whereby Defendant would obtain features by well-known artists in the music industry on Plaintiff's behalf in exchange for a monetary payment by Plaintiff of Sixty-Two Thousand and No/100 Dollars ($62,000.00).

55. At all times material hereto, the Feature Fees Agreement was in full force and effect.

56. Plaintiff performed his duties under the Feature Fees Agreement.

57. Defendant materially breached the Feature Fees Agreement by failing to obtain any features, much less features by well-known artists in the music industry.

58. As a direct and proximate cause of said breach, Plaintiff has suffered damages in the amount of $62,000.00.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant for the sum of $62,000.00 plus interest, costs and attorneys' fees, and such other and further relief that this Court deems just and proper.

### COUNT III – BREACH OF CONTRACT
### (Licensing Fees)

59. Plaintiff adopts, realleges, reavers, and incorporates by reference all allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

60. In May 2019, Plaintiff and Defendant entered into a valid and enforceable agreement (the "Licensing Fees Agreement") whereby Plaintiff paid Defendant approximately Twenty Thousand and No/100 Dollars ($20,000.00) in exchange for Defendant providing Plaintiff with two Recordings for which Plaintiff would be the exclusive licensee.

61. At all times material hereto, the Licensing Fees Agreement was in full force and effect.

62. Plaintiff performed his duties under the Licensing Fees Agreement.

63. Defendant materially breached the Licensing Fees Agreement because the Recordings were used by other artists making Plaintiff not the exclusive licensee of the Recordings.

64. As a direct and proximate cause of said breach, Plaintiff has suffered damages in the amount of $20,000.00.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant for the sum of $20,000.00 plus interest, costs and attorneys' fees, and such other and further relief that this Court deems just and proper.

## COUNT IV – FRAUD IN THE INDUCEMENT

65. Plaintiff adopts, realleges, reavers, and incorporates by reference all allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

66. In or about May 2019, Defendant knowingly and purposefully made false statements of material fact to Plaintiff to induce Plaintiff to enter into three (3) agreements.

67. These false statements include misrepresentations:

      a. About Defendant's capabilities to create and distribute Blog Posts on Plaintiff's behalf;

      b. About Defendant's ability and willingness to obtain placements and promotions in iTunes and Spotify on Plaintiff's behalf;

      c. That Defendant would obtain features from Kevin Gates, lil skies, T.I., and Trippie Redd; and

      d. That Defendant provided Plaintiff with exclusive licenses for the Recordings.

68. Defendant made these false statements in text messages, emails, and oral conversations with Plaintiff in Orange County, Florida.

69. Defendant knew his statements were false and had no intention of providing the features, exclusive licenses, or Blog Posts promised to Plaintiff.

70. Instead, Defendant intended to use his notoriety to scam Plaintiff out of over One Hundred Sixteen Thousand Five Hundred and No/100 Dollars ($116,500.00).

71. Defendant further knew that Plaintiff would reasonably rely on his false statements because of Defendant's notoriety in the music industry.

72. Plaintiff did, in fact, reasonably rely on Defendant's false statements and trusted that he would do as he promised.

73. But for these false statements, Plaintiff would not have entered into any agreements with Defendant.

74. But for these false statements, Plaintiff would not have paid any monies to Defendant.

75. As a direct and proximate result of Plaintiff's justifiable reliance on Defendant's fraudulent statements, Plaintiff has sustained, and will continue to sustain, substantial monetary

damages and losses, including without limitation, lost profits, cost of substitute recordings, loss of goodwill, loss of business reputation, and attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant for damages, interest, costs and attorneys' fees, and such other and further relief that this Court deems just and proper.

**COUNT V – VIOLATION OF FLORIDA'S
DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
Fla. Stat. § 501.204**

76. Plaintiff adopts, realleges, reavers, and incorporates by reference all allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

77. The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA"), prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

78. Plaintiff is a "consumer" as defined by Fla. Stat. § 501.203(7).

79. Defendant is engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

80. Defendant engaged in deceptive acts and unfair trade practices in the State of Florida by wrongfully inducing Plaintiff to enter into three (3) agreements, knowing Defendant had no intention of performing his contractual obligations.

81. Defendant engaged in deceptive and unfair trade practices in the State of Florida by intentionally misrepresenting that he secured features from several well-known musical artists, including Kevin Gates, lil skies, T.I., and Trippie Redd, knowing he had not done so.

82. Defendant further engaged in deceptive and unfair trade practices in the State of Florida by intentionally and knowingly selling Plaintiff stolen or unlicensed musical recordings.

83. Defendant's deceptive conduct has misled and is likely to continue to mislead consumers inside and outside the State of Florida into reasonably believing that Defendant has the capability to provide the services described in the agreements.

84. Defendants' fraudulent conduct constitutes unfair or deceptive acts or practices in violation of § 501.204, Fla. Stat.

85. Defendants' unconscionable and deceptive acts and practices were designed to inflict injury and harm to Plaintiff, as well as to cause damage to consumers in the State of Florida.

86. In addition, Defendant has been unjustly enriched because of his deceptive acts and practices.

87. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiff has suffered, and continues to suffer, irreparable harm, including lost revenue, loss of goodwill, loss of opportunity, and attorneys' fees and costs, for which he is entitled to damages.

88. Pursuant to Fla. Stat. § 501.211, Plaintiff is entitled to entry of an injunction enjoining Defendant from any further violations of the statute.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant for damages, interest, costs and attorneys' fees, entry of an order enjoining Defendant from further violating the statute and any such other and further relief that this Court deems just and proper.

## COUNT VI – CIVIL THEFT

89. Plaintiff adopts, realleges, reavers, and incorporates by reference all allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

90. Defendant knowingly obtained and used One-Hundred Sixteen Thousand Five Hundred and No/100 Dollars ($116,500.00) which belonged to Plaintiff with felonious intent to

either temporarily or permanently deprive Plaintiff of the right to the money and to appropriate the money to Defendant's own use in violation of § 772.11, Fla. Stat.

91. As a direct and proximate result of Defendant's theft, Plaintiff has suffered, and continues to suffer, harm, including the lost sum of $116,500.00, plus interest, and attorneys' fees and costs, for which he is entitled to damages.

92. Before filing this suit, Plaintiff served on Defendant a written demand for payment in the amount of $116,500.00, which represents a sum that is equal the amount of the theft, and informed Defendant that pursuant to Fla. Stat. § 772.11, he may be awarded three times that amount plus reasonable attorneys' fees and court costs, a true and correct copy of which is attached hereto as Exhibit "B".

93. To date, Defendant has failed and refused to pay the amount demanded despite demand therefor.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant for damages, interest, costs and attorneys' fees, and such other and further relief this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury for all issues so triable.

Respectfully Submitted,

MEEHLE & JAY P.A.

By: /s/ Suzanne D. Meehle
Suzanne D. Meehle, Esq.
Florida Bar No.: 0026562
1215 E. Concord Street
Orlando, Florida 32801
T: (407) 792-0790
F: (407) 792-4787
E: suzanne@meehle.com
Attorney for Plaintiff

By: /s/ Davey T. Jay
Davey T. Jay, Esq.
Florida Bar No.: 0023255
1215 E. Concord Street
Orlando, Florida 32801
T: (407) 792-0790
F: (407) 792-4787
E: davey@meehle.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on this 11th day of December, 2020, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF System, which will send a notice of electronic filing to all CM/ECF Participants.

        */s/ Suzanne D. Meehle*
        Suzanne D. Meehle, Esq.
        Florida Bar No.: 0026562
        1215 E. Concord Street
        Orlando, Florida 32801
        T: (407) 792-0790
        F: (407) 792-4787
        E: suzanne@meehle.com
        Attorney for Plaintiff

        */s/ Davey T. Jay*
        Davey T. Jay, Esq.
        Florida Bar No.: 0023255
        1215 E. Concord Street
        Orlando, Florida 32801
        T: (407) 792-0790
        F: (407) 792-4787
        E: davey@meehle.com
        Attorney for Plaintiff